JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SAMUEL MICHAEL SABER,<br><br>Debtor. | Case No. 2:20-cv-05729-MCS<br><br>Bankruptcy Case No. 2:18-bk-16688-BB |
| SAMUEL MICHAEL SABER,<br><br>Appellant,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., et al.,<br><br>Appellees. | **ORDER:**<br>    (1) **GRANTING MOTION OF JPMORGAN CHASE BANK, N.A. TO APPOINT A CHAPTER 11 TRUSTEE, OR IN THE ALTERNATIVE, CONVERT THE CASE TO CHAPTER 7;**<br>    (2) **SUSTAINING JPMORGAN CHASE BANK, N.A.'S OBJECTION TO DEBTOR'S ELECTION UNDER SUBCHAPTER V;**<br>    (3) **DENYING DEBTOR'S MOTION UNDER FRBP 9023 AND 9024 FOR RECONSIDERATION** |

Appellant Samuel Michael Saber appeals the Bankruptcy Court's final orders: (1) granting Appellee JPMorgan Chase Bank, N.A.'s ("Chase") motion to convert the

1

1   case to Chapter 7; (2) sustaining Chase's objection to Saber's election under subchapter
2   V; and (3) denying Saber's motion for reconsideration.  (Notice of Appeal, Ex. 1, ECF
3   No. 1.)   For the following reasons, the Court **AFFIRMS** the Bankruptcy Court's
4   decisions.

5   **I.      BACKGROUND**

6          Saber's estate consists of two single family residences—the Newport Beach
7   Property and the Santa Monica Property—that he maintains as rental properties
8   (collectively, "Properties"). (Opening Br. 4, ECF No. 29-1.) Chase is a secured creditor
9   of the Newport Beach Property.  (Schedule D, Appellant's App. of Record Volume
10  ("Vol.") 14, Ex. 73 at 4477, ECF No. 27-1.)

11         Chase was going to foreclose on the Newport Beach Property, so Saber sought
12  financial restructuring and filed for Chapter 11 bankruptcy on June 10, 2018. (Opening
13  Br. 4; Case Status Report, Vol. 14, Ex. 83 at 4536, ECF No. 27-1.)

14         On March 20, 2020, Chase filed a motion to appoint a Chapter 11 Trustee or, in
15  the alternative, to convert the case to Chapter 7.  (Vol. 1, Ex. 1 at 1, ECF No. 25.)  On
16  April 22, 2020, Saber filed an opposition to Chase's motion to convert the case and also
17  amended his bankruptcy petition to elect small business treatment under subchapter V
18  of Chapter 11.  (Opening Br. 6; Chase Reply Br. 4, ECF No. 38; Anderson Reply Br. 9,
19  ECF No. 37; Vol. 7, Ex. 17 at 2297, ECF No. 26.)  Chase objected to Saber's subchapter
20  V election on April 24, 2020.  (Vol. 8, Ex. 30 at 2649, ECF No. 26-1.)

21         On April 29, 2020, the Bankruptcy Court held a hearing on the motion to convert
22  the case to Chapter 7 and Chase's objection to Saber's election to proceed under
23  subchapter V (the "Hearing").  (Hearing Tr., Vol. 10, Ex. 43 at 3032, ECF No. 26-3.)
24  During the Hearing, the Bankruptcy Court presented a tentative decision and gave the
25  parties an opportunity to be heard.  (*See* Tentative Ruling, Vol. 10, Ex. 42 at 3021, ECF
26  No. 26-3; *see also* Hearing Tr., Vol. 10, Ex. 43 at 3032.)

27         On May 4, 2020, the Bankruptcy Court followed its tentative decision and issued
28  an order granting Chase's motion to convert the case to Chapter 7 and an order

sustaining Chase's objection to Saber's election under subchapter V.  (Vol. 8, Ex. 28 at 2642, ECF No. 26-1; Vol. 10, Ex. 40 at 3014, ECF No. 26-3.)

On May 18, 2020, Saber filed a motion under Federal Rules of Bankruptcy Procedure (FRBP) 9023 and 9024 for reconsideration of the orders converting the case to Chapter 7 and sustaining Chase's objection to Saber's subchapter V election.  (Vol. 10, Ex. 48, ECF No. 26-3.)  Chase opposed.  (Vol. 12, Ex. 57 at 3874, ECF No. 26-5.)

On May 31, 2020, the Bankruptcy Court issued an order denying Saber's motion for reconsideration, and Saber filed this appeal on June 26, 2020.  (Notice of Appeal, ECF No. 1.)

## II.  LEGAL STANDARD

"Findings of fact of the bankruptcy court are reviewed for clear error, and conclusions of law are reviewed de novo.  Mixed questions of law and fact are reviewed de novo."  *Harkey v. Grobstein (In re Point Ctr. Fin., Inc.)*, 957 F.3d 990, 995 (9th Cir. 2020) (citations omitted).  The bankruptcy court's "findings of fact are accorded considerable deference and are only clearly erroneous if we are left with a definite and firm conviction a mistake has been committed."  *Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)*, 618 B.R. 1, 5 (9th Cir. B.A.P. 2020).  This Court may affirm a decision on any basis supported by the record.  *Id.*

## III.  DISCUSSION

There are three issues presented on appeal: (1) whether the Bankruptcy Court abused its discretion in converting Saber's Chapter 11 bankruptcy case to Chapter 7; (2) whether the Bankruptcy Court erred in sustaining Chase's objection to Saber's election to proceed under subchapter V of Chapter 11; and (3) whether the Bankruptcy Court abused its discretion in denying Saber's Motion for Reconsideration.  (Statement of Issues on Appeal, ECF No. 10; Opening Br. 3.)  The Court addresses each issue.

### 1) Conversion from Chapter 11 to Chapter 7

The first issue on appeal is whether the Bankruptcy Court abused its discretion in converting Saber's Chapter 11 bankruptcy case to Chapter 7 pursuant to 11 U.S.C. §

1    1112(b)(1).  (Opening Br. 3.)

2         Section 1112(b)(1) provides that "on request of a party in interest, and after notice

3    and a hearing, the court shall convert a case under this chapter to a case under chapter

4    7 or dismiss a case under this chapter, whichever is in the best interests of creditors and

5    the estate, for cause unless the court determines that the appointment under section

6    1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

7    11 U.S.C. § 1112(b)(1).

8         Saber argues that the Bankruptcy Court abused its discretion in finding "cause"

9    under section 1112(b)(4) to convert his bankruptcy case from Chapter 11 to Chapter 7.

10   (Opening Br. 24.)

11        Section 1112(b)(4) outlines several grounds that constitute "cause" for purposes

12   of converting or dismissing Chapter 11 bankruptcy cases.[1]  11 U.S.C. § 1112(b)(4).

13   From section 1112(b)(4)'s enumerated list, the Bankruptcy Court cited two grounds for

14   cause under section 1112(b)(4)—diminution in value and failure to comply with court

15   orders—as reasons to convert Saber's case to Chapter 7.  (Hearing Tr., Vol. 10, Ex. 43.)

16        **(a) Diminution in value**

17        A "substantial or continuing loss to or diminution of the estate and the absence

18   of a reasonable likelihood of rehabilitation" constitutes cause under section 1112(b)(4).

19   11 U.S.C. § 1112(b)(4)(A).

20        Saber argues that the Bankruptcy Court abused its discretion in finding cause to

21   convert his bankruptcy case.  (Opening Br. 24–25.)  Specifically, Saber asserts that a

22   "factual review of the evidence does not support the [Bankruptcy Court's] findings" of

23

24   ─────────────────────

25   [1] The Court notes that section 1112(b)(4)'s enumerated list is non-exhaustive and the Bankruptcy
     Court had discretion to also consider case-specific factors in its analysis.  *In re Consol. Pioneer Mortg.*
26   *Entities*, 248 B.R. 368, 375 (9th Cir. B.A.P. 2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001) ("The
     enumerated causes are not exhaustive, and the court will be able to consider other factors as they arise,
27   and to use its equitable powers to reach an appropriate result in individual cases.") (internal quotation
     marks omitted).
28

4

1   a substantial and continuing diminution to the estate.  (Opening Br. 25, 28–29.)

2       Saber insists that "[t]here was no evidence before the [Bankruptcy] court which

3   showed the value of the estate had actually diminished."  (Opening Br. 28.)  According

4   to Saber, the Bankruptcy Court ignored the Newport Beach Property's different

5   valuations and did not take the Santa Monica Property's valuation into account.

6   (Opening Br. 28.)

7       Contrary to Saber's assertion that the Bankruptcy Court ignored the valuations,

8   the extensive record reflects the Bankruptcy Court's thorough and comprehensive

9   consideration of the valuations in finding cause to convert the case.  During the Hearing,

10  the Bankruptcy Court directly addressed the valuations and noted that Saber "offered

11  valuations for these properties that continue to show a decrease in value since the filing

12  date."  (Hearing Tr., Vol. 10, Ex. 43 at 3090.)  To determine whether there was

13  diminution to the estate, the Bankruptcy Court recognized that the record showed "the

14  property going down in value," and that Saber was "spending the rents in the

15  meantime."  (*Id.*)  The Bankruptcy Court explained that the rent Saber collected "could

16  have gone toward the payment of unsecured creditors under the plan" but instead, Saber

17  was "pocketing it."  (*Id.*)  The Bankruptcy Court concluded that these facts provided

18  "ample cause to convert this case to Chapter 7, as there has been a substantial and

19  continuing loss or diminution to the estate . . . [and] no reasonable likelihood of

20  reorganization."  (*Id.* at 3090–91.)

21      Saber acknowledges that the Bankruptcy Court considered his retention of the

22  Properties' rent as part of the basis for finding cause, but insists that this factual

23  determination was also an abuse of discretion.  (Opening Br. 29.)

24      However, simply because the Bankruptcy Court's finding was unfavorable to

25  Saber does not mean it was an abuse of discretion.  *See In re Consol. Pioneer Mortg.*

26  *Entities*, 248 B.R. at 375 ("A bankruptcy court is given wide discretion to convert a

27  chapter 11 case to chapter 7 for cause.") (internal quotation marks omitted).

28  / / /

The record reflects the Bankruptcy Court's thorough and extensive analysis of various factors and evidence to find cause to convert the case on this ground alone. (Hearing Tr., Vol. 10, Ex. 43 at 3090–91); *see In re Corona Care Convalescent Corp.*, 527 B.R. 379, 384 (Bankr. C.D. Cal. 2015) (finding that the lack improvement in debtors' financial condition in a chapter 11 case demonstrated cause for dismissal or conversion based on substantial or continuing loss to estate and the absence of a reasonable likelihood of rehabilitation).

**(b) Failure to comply with court order**

Under section 1112, a "failure to comply with an order of the court" constitutes cause. 11 U.S.C. § 1112(b)(4)(E). In this case, the Bankruptcy Court determined that Saber failed to comply with its order because "even with the most charitable reading," Saber had to either file a status report or plan by the established deadline, and he did neither. (Hearing Tr., Vol. 10, Ex. 43 at 3088.) This factual determination was not an abuse of discretion. *See In re YBA Nineteen, LLC*, 505 B.R. 289, 303 (S.D. Cal. 2014) ("[T]he Court finds that the Bankruptcy Court did not abuse its discretion in finding that no reasonable justification exists for the Debtor's failures to comply with the Scheduling Order.")

Saber argues that the court order's language was ambiguous, so any failure to comply was the result of misunderstanding or lack of clear notice. (Opening Br. 30–31.) But the Bankruptcy Court detailed several instances in the case that rebut Saber's argument and convey a pattern of conduct that indicates Saber was responsible for the delay in producing a feasible plan. (Hearing Tr., Vol. 10, Ex. 43 at 3072, 3081, 3085, 3087–93).

Ultimately, the Bankruptcy Court concluded that Saber "had more than ample time to try to confirm a Chapter 11 plan." (*Id.* at 3091–92). The Bankruptcy Court still considered the plan Saber subsequently submitted, which involved "substantially raising the rents" on the Properties. (Opening Br. 18; Hearing Tr., Vol. 10, Ex. 43 at 3089–93.)

1       To assess the viability of Saber's plan, the Bankruptcy Court reviewed Saber's

2 operating reports and income.  (Hearing Tr., Vol. 10, Ex. 43 at 3089.)  Based on this

3 review and the parties' history, the Bankruptcy Court found there was "no way of

4 knowing that [Saber] could ever increase the rents" and there was no "track record to

5 show that he could operate [the Properties] in a way where he could possibly make . . .

6 plan payments every month."  (*Id.*)

7       Based on these factual findings, the Bankruptcy Court concluded that there was

8 no feasible plan, and "the right result [was] to convert the case to Chapter 7."  (*Id.* at

9 3093); *see In re Johnston*, 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992) ("The inability of

10 a debtor to effectuate a plan is further grounds for conversion of a case.").

11       Saber conflates the Bankruptcy Court's rejection of his arguments as ignoring

12 them.  (Opening Br. 24.)  From the record, it is clear that the Bankruptcy Court

13 considered Saber's arguments along with the entire evidentiary record, which included

14 his proposed plan to increase rents.  Thus, it is disingenuous for Saber to argue that the

15 Bankruptcy Court "did not take into account" his proposed increased rents.  (Opening

16 Br. 24.)

17       The Bankruptcy Court's factual findings were not abrupt or illogical conclusions.

18 Instead, they were based on a detailed and comprehensive analysis of the evidentiary

19 record and Saber's conduct throughout the case.  The Bankruptcy Court's factual

20 findings are not clearly erroneous.  *See Tan Lao v. Avery*, 2017 WL 8186670, at *3

21 (C.D. Cal. Aug. 15, 2017) ("Unless the Court determines that the Bankruptcy Court's

22 factual findings are illogical, implausible, or without support in inferences that may be

23 drawn from the facts in the record, the findings stand.") (quoting *United States v.*

24 *Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (*en banc*)) (internal quotations omitted).

25       Thus, the Bankruptcy Court's finding of cause under section 1112 to convert

26 Saber's bankruptcy case was not an abuse of discretion.  *In re Johnston*, 149 B.R. at

27 160 ("Under Bankruptcy Code § 1112(b) the bankruptcy court is given wide

28 discretion to convert a case to Chapter 7 for cause.").

Accordingly, the Court **AFFIRMS** the Bankruptcy Court's order granting Chase's motion to convert the case to Chapter 7.

**2) Subchapter V Election**

The second issue on appeal is whether the Bankruptcy Court erred in sustaining Chase's objection to Saber's election to proceed under subchapter V of Chapter 11 as a "small business debtor" under 11 U.S.C. § 101(51D).  (Opening Br. 3.)

11 U.S.C. § 101(51D) defines "small business debtor" as "a person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $2,725,625 . . . not less than 50 percent of which arose from the commercial or business activities of the debtor."[2]

Saber argues that the Bankruptcy Court abused its discretion in upholding Chase's objection to Saber's subchapter V election.  (Opening Br. 34.)  Saber takes issue with several of the Bankruptcy Court's factual findings and argues that the Bankruptcy Court should have allowed his case to proceed under subchapter V. (Opening Br. 34–42.)

Because the Bankruptcy Court's decision to convert Saber's case to Chapter 7 was not an abuse of discretion, Saber's election to proceed under subchapter V of Chapter 11 is moot.[3]  But the Court notes that the Bankruptcy Court thoroughly considered the record and outlined several reasons why Saber was ineligible to be a

---

[2] The CARES Act that was passed in response to the COVID-19 pandemic raised the debt limit to $7.5 million.  CARES ACT, Pub. L. No.116-136, §1113, 134 Stat 281 (2020).  But the Bankruptcy Court found that this did not retroactively apply to Saber's petition, which had been pending for nearly two years at the time the CARES Act passed.  (Hearing Tr., Vol. 10, Ex. 43 at 3041.)

[3] Because the Bankruptcy Court's conversion of Saber's case to Chapter 7 was not an abuse of discretion, this Court would not be able to provide Saber the relief and benefits he seeks under subchapter V of Chapter 11.  *In re Pattullo*, 271 F.3d 898, 901 (9th Cir. 2001) ("Because the Chapter 13 proceeding has been dismissed, any ruling as to its validity would be moot.").

"small business debtor" in the Chapter 11 context. (*See* Hearing Tr., Vol. 10, Ex. 43.)

As a preliminary matter, the Bankruptcy Court noted that Saber's petition had a designated box to indicate whether the petitioner was a small business debtor, and under penalty of perjury, Saber marked no in response. (*Id.* at 3039.) After this, Saber attempted to alter the characterization of his scheduled debt in an amended plan to qualify as a small business debtor. (*Id.* at 3042–43, 3055.)

Despite Saber's post-petition efforts to change the categorization of his debt, the Bankruptcy Court clearly "underscore[d] the fact that there's no scenario in which these would ever be treated as contingent debts." (*Id.* at 3044.) In addition to finding the schedule changes to be "highly suspect," the Bankruptcy Court found that Saber was "ineligible to elect the application of subchapter V because either of these debts alone," regardless of how they were scheduled, "exceed the statutory maximum of $2,725,625." (*Id.* at 3053.)

During the Hearing, the Bankruptcy Court cautioned the parties that even though the written tentative decision focused on the dollar amount, there were other factors that disqualified Saber from being a "small business debtor." (*Id.* at 3040.) To proceed under subchapter V, Saber would need a feasible plan, which the Court already addressed. (*Id.* at 3088.) For reasons discussed above, the Bankruptcy Court found Saber's plan to increase rents was not feasible and concluded that he was ineligible to be a small business debtor. (*See Id.* at 3067, 3089–91.) Thus, the Bankruptcy Court did not err in sustaining Chase's objection to Saber's election to proceed under subchapter V of Chapter 11 of the Bankruptcy Code.

**3) Motion for Reconsideration**

The third issue on appeal is whether the Bankruptcy Court abused its discretion in denying Saber's motion for reconsideration under FRBP 9023 and 9024. (Opening Br. 3.)

FRBP 9023 and 9024 prescribe procedural guidance and provide that Federal Rule of Civil Procedure (FRCP) 60 applies in scenarios like Saber's. Pertinent to this

appeal, FRCP 60 provides that:

> [T]he court may relieve a party or its legal representative from a final judgment,
> order, or proceeding for the following reasons:
>
> **(1)** mistake, inadvertence, surprise, or excusable neglect;
>
> **(2)** newly discovered evidence that, with reasonable diligence, could not have
> been discovered in time to move for a new trial under Rule 59(b).
>
> Fed. R. Civ. P. 60.[4]

Saber argues that the Bankruptcy Court abused its discretion in failing to grant his motion for reconsideration for mistake or excusable neglect.  (Opening Br. 45.)  According to Saber, he raised excusable neglect in his motion for reconsideration, but the Bankruptcy Court did not rule on the issue or address it in the order denying the motion for reconsideration.  (Opening Br. 45; Saber Reply Br. 21–22, ECF No. 43.)  At the Hearing, the Bankruptcy Court addressed Saber's arguments about excusable neglect.  (*See* Hearing Tr., Vol. 10, Ex. 43.)  The Bankruptcy Court was within its discretion to reject those arguments in Saber's motion for reconsideration because "a motion to reconsider may *not* be used to *rehash* the same arguments presented the first time or simply to express the opinion that the court was wrong."  *In re JSJF Corp.*, 344 B.R. 94, 103 (B.A.P. 9th Cir. 2006), *aff'd and remanded*, 277 F. App'x 718 (9th Cir. 2008) (emphasis in original).

On appeal, Saber attempts to reassert the arguments that the Bankruptcy Court already rejected.  (Opening Br. 47–48.)  Saber uses flawed reasoning to suggest, again, that a rejection of his argument signifies that the Bankruptcy Court failed to consider it.

---

[4] The crux of Saber's argument on this issue is that the Bankruptcy Court abused its discretion because it did not grant his motion for reconsideration based on excusable neglect.  The Bankruptcy Court's order denying Saber's motion for reconsideration directly addresses the second part of FRCP 60, and states that the "Motion for Reconsideration does not set forth any newly-discovered evidence that could not have been raised earlier in the litigation, with the possible exception of the new agreements that the debtor claims to have negotiated with certain of his unsecured creditors to accept cash payments in reduced amounts in satisfaction of their claims."  (Notice of Appeal, Ex. 1.)

1  (*Id.*)  This argument is unavailing.  Not only did the Bankruptcy Court rule on the issues

2  Saber presented, but the order also set forth detailed reasons why the Bankruptcy Court

3  denied Saber's motion for reconsideration.  (Notice of Appeal, Ex. 1.)

4      On appeal, Saber argues that any excusable neglect was due to the mistake and

5  misunderstanding of his prior counsel.  (Opening Br. 46–48.)  But the Bankruptcy

6  Court's order clearly rebuts this argument.  The order states that "any 'confusion' that

7  the debtor or any of his attorneys may have had as to [the court order] . . . is irrelevant"

8  because the Court found that Saber—not his attorneys—"is responsible for the delays

9  in this case."  (Notice of Appeal, Ex. 1.)  The Bankruptcy Court clearly found no basis

10  for excusable neglect or mistake.  (*Id.*)

11      The Bankruptcy Court's nuanced findings are not clearly erroneous.  They

12  demonstrate a thorough and comprehensive review of Saber's motion for

13  reconsideration, and a familiarity with the entire record and Saber's conduct.  *See In re*

14  *Karr*, 278 F. App'x 741, 742 (9th Cir. 2008) ("Findings of fact are not clearly erroneous

15  unless the reviewing court has a definite and firm conviction that a mistake has been

16  made.") (internal quotation marks omitted).

17      Thus, the Bankruptcy Court did not abuse its discretion in denying Saber's

18  motion for reconsideration, and the Court **AFFIRMS** the Bankruptcy Court's order

19  denying the motion for reconsideration.

20  **IV.    CONCLUSION**

21      The Court **AFFIRMS** the decisions of the Bankruptcy Court.  The Clerk is

22  directed to close the case.

23  **IT IS SO ORDERED.**

24

25   Dated: March 23, 2021                    _____

26                                            MARK C. SCARSI

27   cc:  Bankruptcy Court                    UNITED STATES DISTRICT JUDGE

28